ALLISON M. SCOTT (Bar No. 305989)
allison.scott@huschblackwell.com
HUSCH BLACKWELL LLP
355 South Grand Avenue, Suite 2850
Los Angeles, CA 90071
Telephone: (213) 337.6550
Facsimile: (213) 337.6551

HILLARY KLEIN *(Admitted Pro Hac Vice)*
Hillary.klein@huschblackwell.com
HUSCH BLACKWELL LLP
4801 Main Street, Ste 1000
Kansas City, MO 64112
Telephone: (816) 983-8363

Attorneys for Defendant
DOT FOODS, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION**

| | |
|---|---|
| MICHAEL D. DESOTO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DOT FOODS, INC., an Illinois corporation; SERGIO MORALES, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 2:24-cv-01140-WBS-CSK<br><br>**DEFENDANT DOT FOODS, INC.'S STATEMENT OF UNDISPUTED FACTS**<br><br><br>Complaint Filed: December 13, 2023<br>Trial Date: March 24, 2026 |

1. Michael DeSoto ("Plaintiff") worked as a Warehouse Order Selector, which was later retitled to Material Handler, at Defendant Dot Foods, Inc.'s ("Dot Foods") Modesto, California facility ("Modesto Facility") from June 14, 2016 to September 25, 2022. Declaration of Victoria "Tori" Salemi in Support of Motion for Summary Judgment ("Salemi Decl.") (Exhibit 1), ¶ 4 and Ex. A thereto, Plaintiff's Offer Letter.

///

2. As a warehouse worker, Plaintiff handled materials and created pallets of work orders, which involved lifting, twisting, carrying products, using forklifts through narrow-aisle, and using other machinery to maneuver products out of their allotted slots. *Id.*

3. As of September 2022, Plaintiff was regularly scheduled to work night shifts Sunday through Wednesday from 6:00 p.m. to 4:30 a.m. Salemi Decl. (Ex. 1), ¶ 5.

4. As of September 2022, Plaintiff's direct supervisor was Chris Washburn, Warehouse Supervisor at the Modesto Facility. Deposition of Michael D. DeSoto ("Pl.'s Dep.") (Exhibit 2), 38:1-6. Plaintiff was also indirectly supervised by Jeremy Bundy, the California Warehouse Manager at the Modesto Facility, and Sergio Morales ("Mr. Morales"), the Director of Warehousing for the Modesto Facility. Salemi Decl. (Ex. 1), ¶ 5. Plaintiff's human resources contact was Victoria ("Tori") Salemi ("Ms. Salemi"), the California Human Resources Manager at the Modesto Facility. *Id.* at ¶¶ 2, 5.

### *Dot Foods Prohibits Disability Discrimination and Has a Policy of Accommodating Employees' Limitations*

5. Dot Foods adheres to and promulgates several policies prohibiting discrimination against employees or applicants due to disability, encouraging employees to report discrimination, including through an employee hotline, and ensuring such employees will not be subject to retaliation. Dot Foods promptly and thoroughly investigates claims of discrimination. *Id.* at ¶¶ 7, 8, 11 and Ex. B thereto, Equal Employment Opportunity policy, Inclusion & Diversity Policy, Open Door Policy, Employee Hotline, Complaint Resolution Procedure, Unlawful Harassment Prohibited (DESOTO_DOTFOODS_000593-94, 597-98, 629-31), Ex. C thereto, Warehouse Rules and Regulations (DESOTO_DOTFOODS_000641-650), and Ex. A thereto, Plaintiff's Offer Letter, (referencing Open Door Policy and Employee Hotline).

6. Dot Foods also has a policy and practice of making reasonable accommodations for disabled employees. *Id.* at ¶ 12 and Ex. B thereto, Equal Employment Opportunity policy (DESOTO_DOTFOODS_000593).

7. Although warehouse employees' essential duties are physically demanding, making it more difficult to reasonably accommodate employees with physical restrictions, Dot Foods does

HUSCH BLACKWELL LLP
355 S. Grand Ave., Ste 2850, Los Angeles, CA 90071
(213) 337-6550

1  its best to find alternative work assignments for injured employees, including light duty and short-
2  term off-site assignments facilitated through a third-party contractor. *Id.* at ¶¶ 12-14, and Ex. B
3  thereto, Light Duty (DESOTO_DOTFOODS_000599-600).

4      8.    However, light duty assignments are subject to business needs. *Id.* At the Modesto
5  Facility, the only light duty task generally available is sweeping and sanitation, and there is not
6  always a need for such work because the Modesto Facility has a sanitation department that handles
7  cleaning. *Id.* at ¶ 13.

8      9.    Additionally, the short-term off-site assignments are only available for employees
9  whose injuries are likely to last for more than several weeks because it takes a few weeks to set up
10 and receive such assignments. *Id.* at ¶ 14.

11     10.    Dot Foods also provides injured and disabled employees with a number of benefits,
12 including workers compensation, paid sick and personal time, light duty, short-term disability, long-
13 term disability, and unpaid leave, as well as legally required federal and state leave pursuant to the
14 Family Medical Leave Act ("FMLA") and California Family Rights Act ("CFRA"). *Id.* at Ex. B
15 thereto, Light Duty, Personal Time, Sick Time, Short Term Disability, Long-Term Disability Plan,
16 Unpaid Leave of Absence, Family Medical Leave Benefit policies
17 (DESOTO_DOTFOODS_000599-600, 611-17).

18     11.    Dot Foods provided Plaintiff with a copy of these policies and training concerning
19 these policies on the first day of his employment. *Id.* at Ex. A thereto, Plaintiff's Offer Letter, and
20 Group Ex. D thereto, Plaintiff's CA Warehouse Training Checklist dated June 14, 2016, signed by
21 Plaintiff and New Employee Checklist.

22     12.    Plaintiff signed acknowledgements stating that he read and understood the Unlawful
23 Harassment Prohibited policy and received the Warehouse Rules and Regulations. *Id.* at Group Ex.
24 E thereto, Acknowledgement of Unlawful Harassment Prohibited policy and Warehouse Employee
25 Addendum to Handbook Receipt.

26     ***Dot Foods Regularly Accommodated Plaintiff's Limitations***

27     13.    Throughout his employment, and particularly in the two to three years of his
28 employment, Plaintiff utilized Dot Foods' accommodation process and benefits many times for a

HUSCH BLACKWELL LLP
355 S. GRAND AVE., STE 2850, LOS ANGELES, CA 90071
(213) 337-6550

DEFENDANT DOT FOODS, INC.'S STATEMENT OF UNDISPUTED FACTS

variety of unrelated medical reasons. Between January 2020 to the end of Plaintiff's employment, this included, but was not limited to:

 a. *January 2020*: Plaintiff suffered a back injury at work on January 7, 2020. Dot Foods accommodated his injury by assigning him to sedentary work only on January 8, 2020 and to temporary light duty from January 10, 2020 to February 5, 2020. *Id.* at ¶ 16a and Ex. F thereto (DESOTO_DOTFOODS_000294-298). Plaintiff submitted a workers compensation claim for this injury. *Id.* at ¶ 16a and Ex. F thereto (DESOTO_DOTFOODS_000294-298). Due to an unavailability of light duty at the Modesto facility, Plaintiff was off work through February 2, 2020, but was assigned to a short-term off-site assignment at a Good Will store from February 3, 2020 to February 5, 2020. *Id.* at ¶ 16a and Ex. H thereto, Tori-Plaintiff Texts (DESOTO_DOTFOODS_000895-901), and Ex. G thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000528-529). Plaintiff returned to work on February 9, 2020. *Id.*

 b. *April to June 2020*: Plaintiff was granted unpaid leave of absence from April 5, 2020 to June 10, 2020 related to COVID-19. *Id.* at ¶ 16b and Ex. G thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000533-536); Ex. H, Tori-Plaintiff Texts (DESOTO_DOTFOODS_000902-904).

 c. *July to August 2020*: After Plaintiff provided the required FMLA/CFRA paperwork to Dot Foods, Dot Foods placed Plaintiff on FMLA/CFRA leave for the care of his spouse from July 13, 2020, to July 28, 2020. *Id.* at ¶ 16c and Ex. G, thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000533-536) and Ex. H thereto, Tori-Plaintiff Texts (DESOTO_DOTFOODS_000902-904). Dot Foods allowed Plaintiff to extend his time off with a discretionary unpaid leave of absence from July 29, 2020 to August 20, 2020. *See Id.* at ¶ 16 c and Ex. G thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000539).

 d. *October 2020*: On October 2, 2020, Plaintiff injured his wrist at work and submitted a worker's compensation claim. *Id.* at ¶ 16d and Ex. F thereto, Workers' Compensation Claim Form for October 2, 2020 injury (DESOTO_DOTFOODS_000273).

e. *January 2021*: Dot Foods provided Plaintiff with an unpaid leave of absence from January 8, 2021 to January 24, 2021 related to his depression; he did not qualify for FMLA/CFRA leave because he had not worked the required 1,250 hours. *Id.* at ¶ 16e and Ex. F thereto, Email from Ms. Salemi to Plaintiff dated January 5, 2021 and attached FMLA/CFRA – Notice of Eligibility and Rights & Responsibilities (DESOTO_DOTFOODS_000262-66), and Ex. G thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000547-548); Deposition of David Lowry, M.D. ("Lowry Dep.") (Exhibit 3), 13:18-44:22 (confirming Plaintiff's depression diagnosis during January 8, 2021 office visit, recommended treatment, and doctor's note). Prior to this, Plaintiff had been off work since December 10, 2020 and used a mix of sick, vacation, personal, and holiday time as well as unpaid leave. *Id.* at ¶ 16e and Ex. G thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000547-548).

f. *March 2021*: On March 28, 2021, Plaintiff purportedly hurt his back at work and submitted a workers' compensation claim. *Id.* at ¶ 16f and Ex. F thereto, Workers' Compensation Claim Form, DESOTO_DOTFOODS_000247. Plaintiff was off work for one day and when he returned to work, Dot Foods placed Plaintiff on the Narrow Aisle "NA" for two days to help minimize the amount of lifting Plaintiff would have to do. *Id.* at ¶ 16f and Ex. G thereto, Plaintiff's Timesheets, DESOTO_DOTFOODS_000552; Declaration of Sergio Morales in Support of Motion for Summary Judgment ("Morales Decl.") (Exhibit 4), ¶ 5 and Ex. M thereto, Back Injury Texts (DESOTO_DOTFOODS_000917).

g. *May and June 2021*. Due to a leg injury, Plaintiff was absent from work from May 16, 2021 to May 24, 2021 and, after submitting a doctor's note on May 24, 2021, was approved for an unpaid leave of absence from May 25, 2021 to June 6, 2021 because he had not worked the required hours to qualify for FMLA/CFRA leave. Salemi Decl. (Ex 1), ¶ 16g and Ex. F thereto, Email from Ms. Salemi to Plaintiff dated May 25, 2021 (DESOTO_DOTFOODS_000173-178) and Ex. G thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000555-556); Morales Decl. (Ex. 4), ¶¶ 6, 8 and Ex. N thereto, Leg Injury Texts (DESOTO_DOTFOODS_000918-19). Plaintiff returned to work on June

7, 2021. Salemi Decl. (Ex. 1), ¶ 16g and Ex. G thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000556).

   h. *August and September 2021*: Dot Foods placed Plaintiff on FMLA/CFRA leave from August 29, 2021 to September 21, 2021 for back pain. Salemi Decl. (Ex. 1), ¶ 16h and Ex. F thereto, Email from Ms. Salemi to Plaintiff dated September 7, 2021 and attached FMLA/CFRA Designation Notice dated September 7, 2021 (DESOTO_DOTFOODS_000223-225) and Ex. G thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000561-562).

   i. *February 2022*: Plaintiff was excused from work between February 15, 2022 to February 18, 2022 due to a head injury. *Id.* at ¶ 16i and Ex. F thereto, Doctor's note dated February 15, 2022 (DESOTO_DOTFOODS_000156) and Ex. G thereto, Plaintiff's Timesheets (DESOTO_DOTFOODS_000570); Declaration of Jeremy Bundy in Support of Motion for Summary Judgment ("Bundy Decl.") (Exhibit 5), ¶ 5 and Ex. Q thereto, Head Injury Texts.

   j. *June 2022:* On June 7, 2022, Plaintiff suffered a shoulder injury at work which he reported to Dot Foods on June 12, 2022. He submitted a workers' compensation claim for the injury and was off work until June 20, 2022, and was on modified duty until July 10, 2022. Salemi Decl. (Ex. 1), ¶ 16j and Ex. F, Injury and Illness Incident Report (DESOTO_DOTFOODS_000126), Workers' Compensation Claim Form (DESOTO_DOTFOODS_000137), Provider Statement/Work Statuses (DESOTO_DOTFOODS_140-144); Ex. G, Plaintiff's Timesheets (DESOTO_DOTFOODS_000579).

  14. Plaintiff testified that he did not know of or remember Dot Foods having any issue with him taking approved leaves of absence or returning to work after them. Pl.'s Dep. (Ex. 2), 89:15-90:10, 94:20-22, 96:22-97:3.

  15. Plaintiff testified that Dot Foods had provided him with workplace accommodations during his employment. *Id.* at 102:9-103:1.

///

***Dot Foods' Communications Regarding Plaintiff's May 2021 Leg Injury***

16. On Sunday, May 16, 2021, Plaintiff had texted Mr. Morales and Mr. Bundy that he injured himself while playing with his daughter at the park and he had "trouble walking let alone bending and lifting." Morales Decl. (Ex. 4), ¶ 6 and Ex. N thereto, Leg Injury Texts (DESOTO_DOTFOODS_000918). On Wednesday, May 19, 2021, Plaintiff texted Mr. Morales that his leg still hurt if he grabbed something off the floor and it was "so tight that [he] had to straighten [his] leg out and bend with just the other knee." *Id.* at ¶ 6 and Ex. N thereto, Leg Injury Texts (DESOTO_DOTFOODS_000919). He also reported that he had a doctor's appointment scheduled for May 24, 2021. *Id.*

17. On Monday, May 24, 2021, Mr. Washburn received reports from several of Plaintiff's coworkers that Plaintiff had vacationed in Las Vegas, Nevada that weekend, and he informed Mr. Morales of these reports. Morales Decl. (Ex. 4), ¶ 7 and Ex. O thereto, Vegas Trip Texts (DESOTO_DOTFOODS_000921). On Thursday, May 27, 2021 and Friday, May 28, 2021, Mr. Washburn forwarded Mr. Morales screenshots of a group text message between Plaintiff and several coworkers dated Friday, May 21, 2021 in which Plaintiff said he had arrived in Las Vegas the night before, he had told Dot Foods he pulled a muscle or tendon, and he thought he would be back to work Monday night. *Id.* at ¶ 7 and Ex. O thereto, Vegas Trip Texts (DESOTO_DOTFOODS_000921-922). Mr. Washburn also forwarded Mr. Morales a screenshot of a post by Plaintiff's wife titled "Vegas W R E C K T . . . What a mess we made," which included a photo of Plaintiff dated May 21, 2021 in which he is standing with his tongue out flashing double "rock on" hand signs. *Id.* at ¶ 7 and Ex. O thereto, Vegas Trip Texts (DESOTO_DOTFOODS_000922).

18. On Monday, May 24, 2021, Plaintiff also sent Mr. Morales a copy of his doctor's note excusing him from work until June 7, 2021. *Id.* at ¶ 8 and Ex. N thereto, Leg Injury Texts (DESOTO_DOTFOODS_000919).

19. After receiving Plaintiff's doctor's note, Mr. Morales texted Plaintiff for updates on his condition on May 25, 2021, May 29, 2021, and June 3, 2021. *Id.* at ¶ 9 and Ex. N thereto, Leg Injury Texts (DESOTO_DOTFOODS_000919-920). Mr. Morales asked if the doctor had

HUSCH BLACKWELL LLP
355 S. GRAND AVE., STE 2850, LOS ANGELES, CA 90071
(213) 337-6550

recommended anything to expedite his recovery and mentioned "hopefully" Plaintiff would "recover sooner" and it would "be good to have [Plaintiff] back" because they had been busy. *Id.* at ¶ 9 and Ex. N thereto, Leg Injury Texts (DESOTO_DOTFOODS_000920). Mr. Morales did not ask or instruct Plaintiff to return to work prior to June 7, 2021. *Id.*

***Plaintiff's Prior Attendance and Performance Violations Under the Progressive Disciplinary Policy***

20. Dot Foods has a Progressive Disciplinary Policy under which Dot Foods will typically issue discipline to employees in four sequential steps of corrective action. The fourth step of discipline can take many forms, including suspension or termination of employment. Salemi Decl. (Ex. 1), ¶ 17 and Ex. B thereto, Progressive Disciplinary Policy, DESOTO_DOTFOODS_000620-21.

21. Under the Progressive Disciplinary Policy, an employee must complete one full year (a rolling 12-month period) without any discipline before the employee is considered out of the discipline process. *Id.* This means that once an employee receives a step of discipline, that step of discipline will not fall off until an entire year passes without any other steps of discipline. *Id.* at ¶ 17. If an employee receives multiple disciplinary steps within a 12-month period, all disciplinary steps remain until a year after the most recent disciplinary step. *Id.* If, for example, an employee receives a step of discipline on June 1st and a second step of discipline on December 1st the same year, that employee will need to wait until December 2nd the following year until **both** steps of discipline would fall off and they would be out of the progressive disciplinary step process. *Id.*

22. Employees can utilize the complaint resolution procedures outlined in the Employee Handbook if the employee believes that he or she was unfairly disciplined or that the discipline imposed was out of proportion to the alleged offense. *Id.* at Ex. B thereto, Open Door Policy, Employee Hotline, Complaint Resolution Procedure, Progressive Disciplinary Policy (DESOTO_DOTFOODS_000592-93, 597-98, 620).

23. Dot Foods also has an Attendance Policy which cautions that "[u]nscheduled absences occurring during a given calendar year that exceed an employee's available sick time for that year will be considered 'excessive absences' regardless of whether the employee provides a

doctor's note or not. For those employees who have exhausted their available sick time, further unscheduled absences during the calendar year will be subject to progressive discipline steps." *Id.* at Ex. B thereto, Attendance Policy (DESOTO_DOTFOODS_000621-22).

24. Plaintiff signed acknowledgments of the Progressive Disciplinary Policy and Attendance Policy, stating that he both read and understood them. *Id.* at ¶ 9 and Group Ex. E thereto, Acknowledgment of Attendance Policy (DESOTO_DOTFOODS_000050), Acknowledgement of Progressive Disciplinary Policy (DESOTO_DOTFOODS_000053); Pl.'s Dep. (Ex. 2), 27:24-28:14 (verifying signature on Progressive Disciplinary Policy) and 28:23-29:13 (verifying signature on Attendance Policy). Plaintiff also received training covering these policies. Salemi Decl. (Ex. 1), ¶ 9 and Group Ex. D thereto, CA Warehouse Training Checklist (noting Attendance Policies, Discipline Policy, and Employee Handbook were covered) and New Employee Checklist.

25. Plaintiff testified that he understood that he could be terminated after the third step of discipline under the Progressive Disciplinary Policy. Pl.'s Dep. (Ex. 2), 31:8-12.

26. On April 27, 2021, Plaintiff received a first step of discipline under Dot Foods' Progressive Disciplinary Policy for failing to complete his MHE pre-trip inspection for the fifth time that year. Salemi Decl. (Ex. 1), ¶ 18 and Ex. I thereto, Employee Disciplinary Notice dated April 27, 2021. This discipline was issued by Chris Washburn and Plaintiff signed the notice. *Id.*; Pl.'s Dep. (Ex. 2), 55:1-12 (Plaintiff confirmed he signed the notice).

27. On June 7, 2021, Plaintiff received a second step of discipline under Dot Foods' Progressive Disciplinary Policy for violating the Attendance Policy when he called off work with no available sick time on May 16, 2021. Salemi Decl. (Ex. 1), ¶ 19 and Ex. J thereto, Employee Disciplinary Notice dated June 7, 2021. This discipline was issued by Mr. Morales and Plaintiff signed the notice. *Id.;* Pl.'s Dep. (Ex. 2), 57:1-58:1 (Plaintiff confirmed he signed the notice).

28. On October 3, 2021, Plaintiff received a third step of discipline for failing to complete his MHE pre-trip inspection on September 29, 2021, which was his sixth missed inspection of the year. Salemi Decl. (Ex. 1), ¶ 20 and Ex. K thereto, Employee Disciplinary Notice dated October 3, 2021. Plaintiff received a three-day suspension without pay beginning on October 3, 2021 and did not receive a bonus in the third quarter due to this discipline. *Id.* This discipline was

HUSCH BLACKWELL LLP
355 S. GRAND AVE., STE 2850, LOS ANGELES, CA 90071
(213) 337-6550

issued by Mr. Bundy and Plaintiff signed the notice. *Id.*; Pl.'s Dep. (Ex. 2), 59:6-60:3 (Plaintiff confirmed he signed the notice).

29. On Sunday, June 26, 2022, Plaintiff texted Mr. Bundy that he had food poisoning and did not know if he could make it to work. Bundy Decl. (Ex. 5), ¶ 6 and Ex. R thereto, Food Poisoning Texts. Mr. Bundy replied that if he did not have any sick or personal time, his absence would result in discipline. *Id.* Plaintiff then responded that he would come to work. *Id.*

30. On or about June 30, 2022, Plaintiff asked Mr. Bundy when his disciplinary steps would fall off. *Id.* at ¶ 7 and Ex. S thereto, Discipline Texts Mr. Bundy texted Plaintiff that his discipline would fall off on October 4, 2022. *Id.*

### *Plaintiff's Final Disciplinary Step and Termination*

31. On Sunday, September 18, 2022 at about 4:01 p.m., Plaintiff texted Mr. Morales, the following message:

> Hey Sergio this is Michael desoto, this is my new number. I was texting you to let you know I was in the hospital all day Friday for my ribs they did X-rays and they didn't find anything but told me if it doesn't get better within the next couple days to go see my primary doctor. I have an appointment with him tomorrow at 9:30am. I can't twist bend or lift anything without my ribs hurting so I was gonna come in tonight and most likely going to leave cause I can't work under these conditions.

Sergio Decl. (Ex. 4), ¶ 11 and Ex. P thereto, Rib Pain Communications.

32. On Sunday, September 18, 2022 at 5:21 p.m., Mr. Morales replied "since you are informing us that you are unable to work tonight and you have no sick or personal time nor a Dr. Notes excusing you from work this will fall under our normal attendance policy." *Id.*

33. Plaintiff responded that he was heading to work but "can't work under the conditions." *Id.*

34. Mr. Morales reiterated "[i]f you are telling us that you can not work you are essentially calling off." *Id.*

35. Plaintiff responded that he could not get a doctor's note until the next morning and he did not want to get fired. *Id.*

36. Mr. Morales repeated again that "[t]his will still fall under the attendance policy since you are stating that you can not work." *Id.*

37. Plaintiff then called Mr. Morales at 5:43 p.m. on Sunday, September 18, 2022. The call lasted for 5 minutes, 31 seconds. *Id.*. Plaintiff testified that he told Mr. Morales he was "hurt," he asked for light duty, and Mr. Morales told him no. Pl.'s Dep. (Ex. 2), 45:8-22.

38. No light duty work was available at the Modesto Facility on September 18, 2022. Sergio Decl. (Ex. ), ¶ 12.

39. On September 19, 2022, Plaintiff texted Mr. Morales a copy of a doctor's note excusing him from work from September 18, 2022 to September 21, 2022 and stating that he could return to work with no restrictions on September 22, 2022. *Id.* at ¶ 13 and Ex. P thereto, Rib Pain Communications.

40. Plaintiff did not provide any further information to Dot Foods concerning his medical condition, including any diagnosis. Sergio Decl. (Ex. 4), ¶¶ 12, 15; Salemi Decl. (Ex. 1), ¶¶ 21, 24; Bundy Decl. (Ex. 5), ¶¶ 8, 10.

41. Between September 18, 2022 and September 23, 2022, Mr. Morales, Mr. Bundy, and Ms. Salemi decided to terminate Plaintiff's employment pursuant to Dot Foods' Attendance Policy and Progressive Disciplinary Policy for calling out of work with no available sick or personal time on September 18, 2022. Sergio Decl. (Ex. 4), ¶ 14; Salemi Decl. (Ex. 1), ¶ 23; Bundy Decl. (Ex. 5), ¶ 9.

42. On Sunday, September 25, 2022, Plaintiff reported for his next scheduled shift. Pl.'s Dep. (Ex. 2), 63:9-22. Plaintiff did not request any accommodations or indicate that he had any restrictions. Sergio Decl. (Ex. 4), ¶ 15; Salemi Decl. (Ex. 1), ¶ 24; Bundy Decl. (Ex. 5), ¶ 10.

43. Before he started work on September 25, 2022, Mr. Morales and Mr. Bundy brought Plaintiff in for a meeting. Pl.'s Dep. (Ex. 2), 65:1-9. During this meeting, they let Plaintiff know that he had received his fourth step of discipline for violating the Attendance Policy by calling out of work on September 18, 2022 with no available sick or personal time, and that Dot Foods was terminating his employment because he had reached this fourth step of discipline under the Progressive Disciplinary Policy. Sergio Decl. (Ex. 4), ¶ 17; Bundy Decl. (Ex. 5), ¶¶ 11-12; Salemi

Decl. (Ex. 1), ¶ 25 and Ex. L thereto, Employee Disciplinary Notice dated September 25, 2022. Mr. Bundy issued this final disciplinary step. *Id.*

### *Plaintiff's Termination Was Consistent With Dot Foods' Policies*

44. Plaintiff testified that he did not know of anyone else who worked for Dot Foods who violated the Attendance Policy as their fourth step of discipline and was not terminated. Pl.'s Dep. (Ex. 2), 76:2-5.

45. Between September 2014 and July 2025, Dot Foods has terminated eleven other warehouse workers pursuant to the Progressive Disciplinary Policy, terminating their employment on the fourth step of discipline. Salemi Decl. (Ex. 1), ¶ 27. Six of these included discipline under the Attendance Policy. *Id.* These employees were not disabled and had not requested accommodations. *Id.*

### *Plaintiff Believes His Termination Was Unfair*

46. Plaintiff testified that he believes that his termination was unfair because he was hurt, he came in to work, and he was told to leave. Pl.'s Dep. (Ex. 2), 76:6-13.

47. Plaintiff testified that he believed Mr. Morales and Mr. Bundy may have had a problem with him because (a) Mr. Morales had previously asked him when he was coming back to work after he had suffered an injury and submitted a doctor's note, (b) Mr. Morales had, on a different occasion, when Plaintiff was out of work for a different injury and attending a party, texted Plaintiff that Mr. Morales needed "a picture frame," then said "wrong person," (c) Mr. Morales and Mr. Bundy did not say hi to him, and (d) Mr. Bundy, on one occasion, did not acknowledge Plaintiff when he offered to work overtime. *Id.* at 76:25-79:9.

### *Plaintiff's Claimed Emotional Distress*

48. Plaintiff testified that he felt like he was a "lesser person" after his termination, but could not say when he started feeling like this, how he experienced this feeling, how often he had this feeling, if this feeling resulted in any physical manifestations, if he spoke to anyone about this feeling, when this feeling stopped, or how feeling like a lesser person impacted his life in any way. *Id.* at 121:6-10, 122:20-23, 123:7-126:14. He testified that he had stopped feeling like a lesser person

by the date of his deposition and had never taken any medication to address his feeling like a lesser person. *Id.* at 125:2-23.

Dated: October 22, 2025            HUSCH BLACKWELL LLP

                                            By:   */s/ Allison M. Scott*
                                                     ALLISON M. SCOTT
                                                     HILLARY KLEIN

                                                     Attorneys for Defendant
                                                     DOT FOODS, INC.

# PROOF OF SERVICE

*Michael D. Desoto v. Dot Foods, Inc.*
Eastern District of California, Case No. 2:24-cv-01140-WBS-CSK

I am a citizen of the United States and employed in the County of Dallas, Texas. I am over the age of eighteen and not a party to the within-entitled action. My business address is 1900 N. Pearl Street, Suite 1800, Dallas, TX 75201.

On October 22, 2025, I served a copy of the within document(s): **DEFENDANT DOT FOODS, INC.'S STATEMENT OF UNDISPUTED FACTS** as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 22, 2025, at Dallas, Texas.

*/s/ Crystal Rose*
CRYSTAL ROSE