UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MICHAEL D. DESOTO, an individual,<br><br>             Plaintiff,<br><br>    v.<br><br>DOT FOODS, INC., an Illinois corporation; SERGIO MORALES, an individual; and DOES 1 through 20, inclusive,<br><br>             Defendants. | No. 2:24-cv-1140-WBS-CSK<br><br>MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff Michael DeSoto has brought various state law claims against defendant Dot Foods, Inc., which arise out of defendant's allegedly discriminatory termination of plaintiff's employment due to physical disability. (Compl. (Docket No. 1 Ex. A).) Defendant has moved for summary judgment on all claims, (Docket No. 31), which plaintiff opposes (Docket No. 32.).

I.   Plaintiff's Employment with Dot Foods, Inc.

Plaintiff worked as a Warehouse Order Selector and

1

1   Material Handler at defendant's Modesto, California facility from
2   June 14, 2016, to September 25, 2022.  (Plaintiff's Separate
3   Statement of Disputed Facts ("SSDF") (Docket No. 32-2) ¶ 1.)  In
4   this role, plaintiff "handled materials and created pallets of
5   work orders, which involved" manual labor and machine operation
6   "to maneuver products."  (Id. ¶ 2.)

7           Plaintiff's final two years in defendant's employ were
8   disrupted by injury, illness, and leaves of absence.  In January
9   2020, plaintiff suffered a back injury at work and was assigned
10  temporary light duties for several weeks.  (See Declaration of
11  Victoria Salemi ("Salemi Decl.") (Docket No. 31-3) ¶ 16(a)).)
12  From April 5, 2020, to June 10, 2020, plaintiff was provided
13  unpaid leave of absence related to COVID-19.  (Id. ¶ 16(b).)
14  Plaintiff was then placed on leave for a back injury in March
15  2021, a leg injury in May 2021, back pain in August and September
16  2021, a head injury in February 2022, and a shoulder injury in
17  June 2022.  (Id. ¶ 16(g)-(j).)

18          Prior to his termination, plaintiff also faced several
19  instances of disciplinary action.  (Id. ¶¶ 18-25.)  As relevant
20  here, defendant maintains a Progressive Disciplinary Policy,
21  under which violations issue "in four sequential steps of
22  corrective action" that accrue over one-year periods.  (Id. ¶
23  17.)  At the fourth step of discipline, employees may be either
24  suspended or terminated.  (Id. ¶ 23.)

25          Plaintiff received his first disciplinary step in April
26  2021, for failing to complete a pre-trip inspection for the fifth
27  time that year; his second step in June 2021, for calling out of
28  work without sick or personal time; and his third step in October

2

1  2021, for again failing to complete a pre-trip inspection, now
2  for the sixth time.  (Id. ¶¶ 18-25.)  Plaintiff was warned that a
3  further disciplinary step could result in termination.  (Docket
4  No. 31-1 at 13.)
5       On September 18, 2022, plaintiff informed his
6  supervisor that he was experiencing rib pain, that he was "in the
7  hospital all day," that "they did X-rays and they didn't find
8  anything," and that he was unable to "twist bend or lift anything
9  without [his] ribs hurting."  (SSDF ¶ 31.)  He added that he was
10 "most likely going to leave cause [he] can't work under these
11 conditions."  (Id.)  In response, plaintiff was informed that his
12 unscheduled absence "will fall under the attendance policy."
13 (Id. ¶ 32.)  The following day, plaintiff texted his supervisor a
14 copy of a doctor's note excusing him from work for four days,
15 permitting a "return to work with no restrictions" thereafter.
16 (Id. ¶ 39.)
17      Owing to this incident, plaintiff received his fourth
18 and final step of disciplinary action for calling out of work
19 without available sick or personal time.  (Id. ¶ 21-25.)  His
20 employment was terminated on September 25, 2022.  (Id. at ¶ 25.)
21           II.  Disability Discrimination Claims Under FEHA
22      Plaintiff brings his first four claims under
23 California's Fair Housing and Employment Act ("FEHA") on the
24 grounds "that his termination was substantially motivated by
25 unlawful disability discrimination."  (Docket No. 32 at 10.)  The
26 first claim is for Physical Disability Discrimination in
27 violation of Section 12940(a), which "prohibits employers from
28 discharging an employee because of a physical disability."

3

1 | Nadaf-Rahrov v. Neiman Marcus Group, Inc., 166 Cal. App. 4th 952,
2 | 962 (2008).
3 |       A physical disability is defined as "any anatomical
4 | loss, cosmetic disfigurement, physiological disease, disorder, or
5 | condition" that "limits a major life activity." Cenis v. WinCo
6 | Holdings, Inc., No. 117-cv-00863-DAD-JLT, 2018 WL 2412324, at *5
7 | (E.D. Cal. May 29, 2019) (citing Cal. Gov't Code § 12926(k)).  As
8 | relevant to this case, the definition of a physical disability
9 | does not include "conditions that are mild . . . [which] have
10 | little or no residual effects, such as . . . minor cuts, sprains,
11 | muscle aches, soreness, bruises, or abrasions." Cal. Code Regs.
12 | tit. 2, § 11065.  These conditions are not considered
13 | disabilities because they do not meaningfully "limit a major life
14 | activity," such as working. Id.  Thus, if plaintiff cannot
15 | demonstrate that he was suffering from more than a mild
16 | condition, his first FEHA claim must fail.
17 |       Plaintiff's second claim is for Failure to Accommodate
18 | Physical Disability and to Engage in an Interactive Process in
19 | violation of Section 12940(m) and (n), provisions which require
20 | an employer to "provide reasonable accommodation to an employee
21 | with a physical disability," and "to engage in a timely, good
22 | faith, and interactive process to accommodate a known disabled
23 | employee." (Docket No. 1 at 23.)  As with claims under Section
24 | 12940(a), claims under Sections 12940(m) and (n) also require a
25 | plaintiff to show that "he or she has a known physical or mental
26 | disability." Jacobson-Gentry v. County of Santa Clara, No. 23-
27 | cv-04096-NC, 2025 WL 2522373 (N.D. Cal. Sept. 2, 2025); Watts-
28 | Lynch v. Delta Air Lines, Inc., No. CV-159476-MWF-RAOX, 2017 WL

4

11707442 (C.D. Cal. May 9, 2017) ("The requirements for a claim under section 12940(m) mirror those of section 12940(a)[.]"). Accordingly, if plaintiff cannot show he suffered from a qualifying disability under FEHA, his second claim must also fail.

Plaintiff's third claim is for Failure to Take All Reasonable and Necessary steps to Prevent Discrimination in violation of Section 12900, et seq., which "require [defendant] to take all reasonable steps necessary to prevent acts of discrimination." (Docket No. 1 at 24.) "Courts have interpreted a failure to prevent discrimination claim [to be] essentially derivative of a discrimination claim." Harlow v. Chaffey Community College District, No. CV-181583-DSF-SHKX, 2021 WL 2384702, at *11 (C.D. Cal. Mar. 15, 2021) (citing Trujillo v. N. Cnty. Transit Dist., 63 Cal. App. 4th, 280, 289 (1998). The only discrimination claim brought by plaintiff is discrimination based on a physical disability. Consequently, as with the first two claims, plaintiff's third claim is also subject to the requirement that plaintiff demonstrate he suffered from a qualifying physical disability under FEHA.

Plaintiff's fourth claim is for Wrongful Termination in Violation of Public Policy. (Docket No. 1 at 16.) The only public policy conceivably referenced in plaintiff's complaint, articulated in FEHA, is California's fundamental policy against physical disability discrimination in employment. See Cal. Gov't Code § 12920 ("It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right . . . [to] hold employment without discrimination.") Once again,

plaintiff cannot demonstrate physical disability discrimination without first showing that he suffered from a physical disability.  See Fragada v. United Airlines, Inc., No. CV-163914-MWF-JPRX, 2017 WL 4586933, at *8 (C.D. Cal. June 13, 2017) ("A prerequisite to Plaintiff's public policy claim is a qualifying disability.").

In short, necessary to all of plaintiff's FEHA claims is a prima facie showing that plaintiff had a qualifying disability.  See Solis v. Randstad North America, Inc., No. 5:24-cv-00145-JWH-SP, 2024 WL 4468030, at *4 (C.D. Cal. Aug. 16, 2024) (dismissing analogous FEHA claims because plaintiff "failed to show any physical disability); Estes v. AlliedSignal, Inc., No. C-97-1810 MHP, 1998 WL 814693, at *9 (N.D. Cal. Nov. 12, 1998) ("[P]laintiff cannot prove he was disabled under the ADA and FEHA, and therefore, cannot make out a prima facie case under those statutes.").  Because plaintiff has not made this showing, his FEHA claims must fail.

Moreover, even if plaintiff had shown that he suffered from a disability, to establish a prima facie case for disability discrimination, plaintiff must also demonstrate that his employer either had knowledge of his disability or perceived him as having a disability.  See Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F. 3d 1276, 1291 (9th Cir. 2001) (denying disability discrimination claim where employee "introduced no evidence in the record to establish that her managers perceived her to be disabled"); Espindola v. Wismettac Asian Foods, Inc., No. 21-55534, 2022 WL 2287437 (9th Cir. June 24, 2022) (noting that discrimination claim may turn on whether "the company was on

6

notice that [the employee] was disabled").

Plaintiff has not made this showing because he has not shown that defendant had knowledge of any disability.  Plaintiff merely informed his supervisor of generalized pain, before providing a doctor's note that "did not specify a reason for the absence or specify any physical restrictions." (Id. at 18.)  The information in the doctor's note conveyed only a temporary ailment rather than a qualifying disability, and defendant thus had no notice plaintiff suffered from a disability when it terminated him.

In his opposition, plaintiff confirms that he told his supervisor about his rib pain and his hospital visit before relaying a doctor's note that contained no diagnostic information the following day.  (Docket No. 32. at 7.)  He then adds that his doctor provided him with an After Visit Summary "reflect[ing] imaging orders for rib contusion and pleurisy," which "impaired [his] ability to perform the physical demands of his job." (Id.)

Defendant's statement of facts indicates that, aside from the doctor's note, "Plaintiff did not provide any further information to Dot Foods concerning his medical condition, including any diagnosis." (Docket No. 31-2 ¶ 40.)  Plaintiff agrees that the only document provided to defendant was the doctor's note, but insists the note was "documentation . . . [that] constituted sufficient medical substantiation of plaintiff's condition." (SSDF ¶ 40.)  Plaintiff therefore concedes that the only documentation provided to corroborate his condition was his doctor's note.  Viewing the record in light of the above, there is no evidence that defendant had knowledge of a

1  FEHA-protected disability when it took disciplinary action.
2         Courts in this circuit have consistently recognized
3  that a short-lived condition, supported only by a brief and
4  unspecific doctor's note, followed by an unrestricted return to
5  work, does not constitute a qualifying disability under FEHA.
6  See, e.g., Foshee v. MasTec Network Solutions, Inc., No. 1:20-cv-
7  00890 AWI SAB, 2022 WL 446675 (E.D. Cal. Feb. 14, 2022) (finding
8  that plaintiff could not claim disability based on a temporary
9  infection despite a doctor's note instructing an absence from
10 work of several days); Winarto, 274 F. 3d, at 1291 (noting that a
11 vague doctor's note was not sufficient to "prove that [the
12 employer] perceived Winarto to be disabled"); Cenis v. Winco
13 Holdings, 787 Fed. App'x. 947, 948 (9th Cir. 2019) (no disability
14 found where "symptoms subsided two days later, at which point
15 [the employee] returned to work"); Ellis v. City of Reedley, No.
16 cv-F05-01474 AWI SMS, 2007 WL 1098571, at *11 (E.D. Cal. Apr. 12,
17 2007) ("The term disability may incorporate a condition of only
18 temporary duration, but that condition must . . . [be] sufficient
19 to constitute an actual limitation of a major life activity, as
20 opposed to simply the need to take a day off.").
21        The record before the court mirrors these cases.
22 Plaintiff suffered from transient rib pain that, by his own
23 doctor's representation, would resolve within days and permit a
24 return to full duty without limitation.  Nothing in the
25 information communicated to defendant suggested an impairment
26 that would plausibly trigger FEHA obligations.  Defendant could
27 not therefore have discriminated against plaintiff on the basis
28 of a protected disability because, from its perspective, no such

8

1  disability existed.

2      To the contrary, the record strongly suggests a lack of
3  discriminatory motive or pretext on defendant's part.  Defendant
4  had a legitimate, nondiscriminatory reason for firing plaintiff:
5  repeated violations of "established disciplinary and attendance
6  policies."  (Docket No. 31-1 at 6.)  Plaintiff was aware of these
7  policies (SSDF ¶ 24) and had run afoul of them three times; on
8  one occasion, defendant even had reliable information suggesting
9  plaintiff had lied about an injury when attempting to call out of
10 work.  (Id. at 10-11.)  Defendant consistently applied its
11 disciplinary policy to these prior violations, and it
12 accommodated plaintiff's injuries and illnesses on numerous other
13 occasions when plaintiff properly notified his employer or had
14 accrued time off.  (Salemi Decl. ¶ 16-17.)[1]

15     Plaintiff also argues that the closeness in time
16 between his conduct and termination suggests the firing was
17 pretextual.  (Docket No. 32 at 8.)  But without evidence of
18 discriminatory intent, "temporal proximity is ordinarily
19 insufficient to satisfy the burden to provide evidence of

---

[1] At oral argument, plaintiff's counsel insisted that plaintiff had cleared defendant's disciplinary program, because more than one year had elapsed between his first and final violations.  However, defendant's disciplinary policy states that "[i]f an employee receives multiple disciplinary steps within a 12-month period, all disciplinary steps remain until a year after the most recent disciplinary step."  (Docket No. 31-3 at 8.)  Plaintiff's third step of discipline occurred on October 3, 2021, which meant that he would be subject to the policy until October 3, 2022.  (Docket No. 31-4 at 42.)  As his fourth violation occurred on September 18, 2022, plaintiff had not yet cleared his violations and was thus subject to a fourth and final disciplinary step.

9

pretext." Hooker v. Parker Hannifin Corp., 548 Fed. App'x. 368, 370-71 (9th Cir. 2013). "This is especially so where the employer raised questions about the employee's performance before he disclosed his symptoms, and the subsequent termination was based on those performance issues." Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 334-335 (2008) (emphasis in original). As the record does not bear out discriminatory intent on defendant's part, and defendant had repeatedly raised concerns about plaintiff's performance, temporal proximity is insufficient to establish pretext.

Thus, summary judgment must be granted in favor of defendant on plaintiff's FEHA claims for the additional reasons that plaintiff has not shown that his employer had notice of a FEHA-protected disability and there is no evidence in the record indicating discriminatory motive.

III. Intentional Infliction of Emotional Distress

Plaintiff's fifth claim is for intentional infliction of emotional distress ("IIED"), alleging "extreme and outrageous conduct" in terminating him and plaintiff's resulting "anxiety, humiliation, and disruption to his family life." (Id. at 2-3.) "Under California law, '[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Ravel v. Hewlett-Packard Enterprise, Inc., 228 F.

10

Supp. 3d 1086, 1099 (E.D. Cal 2017) (Shubb, J.) (citation omitted).

Plaintiff argues that defendant's conduct surrounding the "abrupt termination of [his] employment" constituted "extreme and outrageous conduct that exceeded all bounds of decency." (Docket No. 32 at 12.)  Defendant argues that because no disability discrimination occurred, its conduct amounts to "simple personnel management activities" which do not support a claim for IIED.  (Docket No. 31-1 at 25.)

The court agrees with defendant.  Where the employer has no awareness of a protected disability, discrimination claims are not cognizable.  Defendant's conduct thus amounted to a simple termination, and "terminating an employee is not alone sufficient to satisfy the standard for extreme and outrageous conduct."  See Onelum v. Best Buy Stores, 948 F. Supp. 2d 1048, 1053 (C.D. Cal. 2013); Galarpe v. United Airlines, Inc., No. 17-cv-06514 EMC, 2018 WL 348161 (N.D. Cal. Jan. 10, 2018) (dismissing IIED claim in FEHA context because "[p]laintiff has not adequately pled discriminatory conduct").

Moreover, plaintiff has not even demonstrated that he suffered emotional distress.  He states that his termination made him feel like a "lesser person," which subsequently caused "significant emotional distress."  (SSDF ¶ 48.)  When asked in his deposition about this feeling, plaintiff was unable to identify when his distress began, how he experienced it, what his symptoms were and how frequently they appeared, whether anyone else noticed his distress, how long it lasted, and how it impacted his life.  (Docket No. 31-4 at 34-37.)

11

1            Plaintiff's nondescript allegations of the duration and
2   severity of his distress do not satisfy the standard of an IIED
3   claim, which requires "emotional distress of such substantial
4   quality or enduring quality that no reasonable [person] in
5   civilized society should be expected to endure it."  Lawler v.
6   Montblanc North America LLC, 704 F. 3d 1235, 1245-46 (9th Cir.
7   2013) (citation omitted).  There is nothing in the record to
8   indicate plaintiff suffered from anything other than typical
9   psychological effects following termination.  See Magnuson v.
10  Burlington Northern Inc., 576 F. 2d 1367, 1369 (9th Cir. 1978)
11  ("Every employee who believes he has a legitimate grievance will
12  doubtless have some emotional anguish occasioned by his belief
13  that he has been wronged.")

14           Plaintiff has not demonstrated that defendant engaged
15  in discrimination based on a physical disability, nor that he
16  suffered emotional distress as a result of defendant's extreme
17  and outrageous conduct.  Accordingly, all his claims must fail.

18           IT IS THEREFORE ORDERED that defendant's motion for
19  summary judgment (Docket No. 31) be, and the same hereby is,
20  GRANTED.  Judgment shall be entered in favor of defendant DOT
21  Foods, Inc. and against plaintiff Michael D. Desoto on all claims
22  of the Complaint.

23  Dated:  December 29, 2025          WILLIAM B. SHUBB
                                       UNITED STATES DISTRICT JUDGE